# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

JOSE REYES, *on behalf of himself and all others similarly situated*,

                      Plaintiff,

    v.

NOCERA RESTAURANT, INC. d/b/a MAMA THERESA'S; MILLENIUM FOODS, LTD. d/b/a MAMA THERESA'S; TREMEZZO, LLC d/b/a MAMA THERESA'S; MARCO NICOTRA and ANTONIO BRANCHINELLI,

                      Defendants.

Case No.: 16-CV-00455

Azrack, J.

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF THE FLSA SETTLEMENT

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND  ...................................................1

    I. Procedural History  ........................................................................................1

    II. Overview of Investigation and Discovery  .........................................................2

    III. Settlement Negotiations, Further Discovery & Preliminary Approval .................5

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ..................6

ARGUMENT ......................................................................................................8

    I. The Settlement Class Meets the Legal Standard for Class Certification .................8

        A. Numerosity ................................................................................................9

        B. Commonality .............................................................................................9

        C. Typicality  ...............................................................................................10

        D. Adequacy of the Named Plaintiff .................................................................11

        E. Certification Is Proper Under Rule 23(b)(3)  ...................................................12

            1. Common Questions Predominate  .............................................................12

            2. A Class Action Is a Superior Mechanism  ..................................................13

    II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects  ...................................................................................14

        A. The Proposed Settlement Is Substantively Fair  ...............................................15

            1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ..................................................................................................15

            2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)  .............16

            3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) .......................................................16

i

4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) .........................................................................................18

5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................................18

6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) .........................................................................................................19

7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................19

B. The Proposed Settlement is Procedurally Fair ..................................................21

1. The Settlement Was the Result of Arm's Length Negotiations.................21

2. The Distribution of Class Notice Satisfied Due Process ...........................22

III. Approval of the FLSA Settlement Is Appropriate Under Federal Law ...............24

CONCLUSION ........................................................................................................26

**TABLE OF AUTHORITIES**

**CASES**
**Page(s)**

*In re Agent Orange Product Liability Litigation MDL No. 381,*
818 F.2d  145 (2d. Cir. 1987).............................................................................23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...............................................12, 13

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) .......24

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .....................................................................15, 17, 18

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640
N.Y.S.2d 845, 847 (1996).......................................................................................23

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969)..............................................................23

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ........................................20

*Campos v. Goode,*
No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) .....................................11

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974).......................................................................................14

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009
WL 6615729 (S.D.N.Y. November 27, 2009) ......................................................9, 11, 12

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................9

*In re Cendant Corp. Litig.*, 264 F .3d 243, 263 ...............................................................16

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)......................................14, 15, 21

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .............11, 17, 21, 22, 25

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006)...............................................8

*Diaz v. E. Locating Serv., Inc.*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ...........11, 14, 17, 21, 25

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)........9, 11

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ....................................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................21

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ..9, 10, 11, 13, 14, 17, 19

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .........................................................9

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ....................................21

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).....................................15

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ...................................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...............................................13

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)................................................25

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) .............................................18

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008)............22

*In re Prudential Securities, Inc.*, 164 F.R.D. 362 (S.D.N.Y 1996)...................................22

*In re Colt Indus.*, 155 A.D.2d 154, 553 N.Y.S.2d 154 (1st Dep't 1990).........................23

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986).............9

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ...................25

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .....................16

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ...............................................8, 10, 18

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) ...........................17

*McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) .......................................12

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ................................25

iv

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...............................11, 12

*Newman v. Stein*, 464 F .2d 689, 693 (2d Cir. 1972) .......................................................20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......................20

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997) ........................18

*Parker v. Time Warner Entertainment Company*, 239 F.R.D. 318 (E.D.N.Y. 2007)........23

*Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C.Cir.1992).........23

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ..........................................18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) .........................................................................................8

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ...................................16

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)............................................................10

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ......................................12

*Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir.1994).........................................................23

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) .......................................14

*In re Top Tankers, Inc. Sec. Litig*.,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...................................21

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. September 29, 2006) ...........................13

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ....................................11

*Trist v. First Federal Savings & Loan Ass'n,* 89 F.R.D. 1, 3 (E.D.Pa.1980) ...................23

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .....................................18

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir.2001)...................................................................................12, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................................14, 21, 22

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)................................16

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988)..................................22, 23

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a) ................................................................................... passim

Fed. R. Civ. P. 23(b)(3)............................................................................... passim

Fed. R. Civ. P. 23(e)(2) ....................................................................................14

## INTRODUCTION

Plaintiff submits this Memorandum of Law in support of his Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval"). For purposes of settlement only, Defendants do not oppose this motion. Other than for settlement purposes, Defendants do not concede in any way that class or collective action certification is appropriate in this case. Defendants continue to deny any and all liability whatsoever and further deny that the claims of Plaintiff and the Class have any merit.

The parties' $585,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiff seeks an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release ("Settlement Agreement"); and (3) approving the FLSA Settlement.

On September 30, 2019, the Court took the first step in the settlement approval process by granting preliminary approval and directing that notice be mailed to class members. Docket No. 78. The members of the class have been notified of the terms of the settlement and their right to opt out of, or object to, it.  For the reasons stated below, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On January 26, 2016, Plaintiff filed the instant lawsuit seeking to bring class and collective action claims against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including allegation of unpaid minimum wages, unpaid overtime compensation,

and unpaid spread of hours claims. On June 30, 2016, the Court granted Plaintiff's motion to amend the Complaint and, on July 15, 2016, Plaintiff filed a First Amended Complaint. On August 16, 216, the Court granted Plaintiff's oral application to file a Second Amended Complaint and, on August 29, 2016, Plaintiff filed his Second Amended Complaint. The Second Amended Complaint alleged that Defendants failed to pay Plaintiff and other similarly situated individuals employed by Defendants as servers and/or bussers the proper minimum and overtime wages due to time shaving, failed to pay spread of hours premium, and failed to provide all front-of-house employees with proper wage statements and wage notices, among other claims. Plaintiff sought to recover, on behalf of himself and others he claims were similarly situated, unpaid wages and overtime premium, unpaid spread of hours, liquidated damages and penalties, and further requested to be awarded injunctive relief and attorneys' fees and costs.

On November 2, 2016, Defendants filed their Answer to the Second Amended Complaint denying Plaintiff's claims, and on February 1, 2017, the parties stipulated to conditional collective certification, which was So Ordered by the Court on February 1, 2017.  Plaintiff mailed notice to putative collective class members and four individuals opted-in to the lawsuit by filing consents to sue. Following discovery, several Court conferences, and Plaintiff's application for a pre-motion conferenced on Plaintiff's anticipated motion for partial summary judgment, the parties agreed to engage in a private class mediation overseen by experienced mediator Martin Scheinman of Scheinman Arbitration & Mediation Services, and sought a stay of the litigation due to the pending mediation.

## II.   <u>Overview of Investigation and Discovery</u>

Plaintiff conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of Class Members' claims, the damages to which they were entitled, if any, and

2

the propriety of class certification. Plaintiff's counsel conducted in-depth interviews with Named Plaintiff and Opt-in Plaintiffs Nubia Avelar, Denise Schellens, Steve Bataan, and Darwin Contreras to determine the hours they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims.

Through discovery produced in connection with mediation, Plaintiff's Counsel received and reviewed extensive employment and payroll records for Named Plaintiff and four Opt-in Plaintiffs, which specifically included ten written tip credit notices, time records, copies of distributed checks, and Defendants' written policies and employee handbook.

Based on this discovery, Plaintiff was able to perform potential damages calculations and assess his claims, the class' claims, and Defendants' defenses. Prior to the February 9, 2018 private mediation, Plaintiff's Counsel performed a damages calculation for the following claims: (i) unpaid minimum and overtime wages due to time shaving of work performed off-the-clock and untipped work, (ii) unpaid spread of hours premium, and (iii) statutory damages for improper wage notices and wage statements. After investigating the claims of the Plaintiff and the Class, in Plaintiff's and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened, for the following reasons:

(I)     Plaintiff, Opt-in Plaintiffs, and the Class brought a time shaving claim based on allegations of a practice of requiring employees to work off-the-clock throughout their purported lunch breaks. This claim is inherently risky, as time shaving is rarely proven on documents alone and require testimony to support such a claim. Although each Plaintiff has affirmed separately that they were subject to this policy from 2010 until at least 2012, significant measures would need to be taken for the claim to be substantiated by other witnesses, and Defendants may simultaneously produce their own witnesses refuting the legitimacy of this claim. However, even if for argument's

sake, it is assumed that meal breaks of some duration were permitted, there is risk as to calculation of damages as it may be impossible to determine how much time out of the one-hour break was used by the individual Class Members to rest and how much of the hour was used to work unpaid.

(II)    Plaintiff, Opt-in Plaintiffs, and Class Members brought a minimum and overtime wages claim based on allegations of Defendants' taking of an invalid tip credit. They claim that the tip credit taken by Defendants was invalid for the following three reasons: first, because Defendants failed to provide them with proper tip credit notices; second, because Defendants required them to perform non-tipped tasks for more than twenty percent (20%) of their work shift; and, third, because Defendants mandated an involuntary tip pooling policy without any employee's prior or express consent. Although the notices produced for Plaintiff Reyes during discovery indicated that Defendants had not included his hourly rate of tip credit deduction as required by law, there is uncertainty whether such violation would invalidate the tip credit. If Defendants were to produce evidence indicating that Plaintiff Reyes' deficient wage notices were the exception, rather than the rule, then Plaintiff's and the Class' claims would be moot. Likewise, Plaintiff's and the Class' claim that Defendants required them to perform non-tipped tasks (such as cleaning the restaurant, preparing foods, or organizing dishes) for more than twenty percent (20%) or two (2) hours of their work shift is similarly risky, as it is highly reliant on witness testimony. If the case were to proceed to trial, Defendants may produce opposing witnesses who will provide testimonial evidence that employees were never required to perform such non-tipped tasks for more than two hours each day.

(III)    Plaintiff and the Class allege a spread of hours claim and, based on the pre-mediation analysis, Defendants' timecards confirm that Plaintiff, Opt-in Plaintiffs, and other employees at Mama Theresa's restaurants worked shifts exceeding ten (10) hours, but no

4

corresponding spread-of-hours premium payments were indicated. The spread of hours claim carries risk, however, as Defendants' production indicated that ten-hour shifts were rarely worked, and only worked by some employees. Even if meritorious, the damage may not be substantial.

(IV)  Plaintiff and Class Members also brought statutory claims with allegations that Defendants failed to provide proper wage statements. However, this claim is based on the unpaid minimum and overtime hours that resulted from the alleged time shaving practice and invalid tip credit claims, which may not prevail. Under the Wage Theft Protection Act, there are no statutory penalties for a failure to provide wage notices or wage statements if no other wage and hour violations existed, *i.e.* failure to pay proper minimum and overtime wages due to time shaving or the taking of an invalid tip credit.

The risks on the substance of the claims and the challenges with achieving commonality on the class claims make this an outstanding recovery for the Class, where each person will obtain, on a gross, per capita basis, almost $3,305 per person before fees and expenses are deducted, without class members having to endure litigation. Based on the Claims Administrator's calculations of the actual settlement allocations to Class Members, the highest settlement payment will be approximately $8,291.29, and the average settlement payment will be approximately $4,375.00 *See* Affidavit of Angela Ferrante ¶ 16, attached as **Exhibit A** to the Declaration of C.K. Lee in Support of Final Approval.  While Plaintiff believes that he could ultimately establish Defendants' liability on some of his claims, to do so would require significant factual development.  Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of final approval.

III.     **Settlement Negotiations, Further Discovery & Preliminary Approval**

The Parties engaged in extensive negotiations.  The formal parameters of the settlement were the result of contentious negotiations.   In addition to numerous informal telephone conferences for settlement, the parties also engaged in an all-day private mediation with Martin F. Scheinman, Esq., of Scheinman Arbitration & Mediation Services on February 9, 2018, at which the parties reached a settlement in principle.  During the months thereafter, the parties continued negotiating the final terms of the class settlement and reached an agreement on all terms, which they memorialized in the Settlement Agreement on October 3, 2018.  If the parties had not been able to settle amicably, the parties would have engaged in further discovery, conducted depositions, retained and deposed experts, Plaintiff would have moved for class certification pursuant to Fed. R. Civ. P. 23, and Defendants would have moved for de-certification of the FLSA collective and summary judgment, each at a significant cost to the parties.

Because of the uncertainty of Plaintiff's legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement of $585,000.00.  Class Counsel then prepared and submitted a preliminary approval motion, which was approved by the Court on September 30, 2019.

**SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION**

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | Up to $585,000 | The Fund covers all of Defendants' obligations under the settlement (exclusive of payroll taxes ordinarily borne by the employer on any W-2 payments under the settlement), including but not limited to any attorneys' fees and costs, administration fees, class members' awards, and service awards to the Plaintiffs, if any. |

6

| Attorneys' Fees and Costs and Expenses | $175,000 | Class Counsel filed a motion for approval of attorneys' fees and reimbursement of expenses on November 8, 2019. |
|---|---|---|
| Administration Fees | $25,000 | Admin. Fees are comparable to admin. fees usually paid to the settlement administrator in similar class settlement administrations with similar class sizes. |
| Service Awards | $15,000 | $10,000 to Named Plaintiff and $2,500 to each of the two Opt-in Plaintiffs for their assistance to Class Counsel and service on behalf of the Class. Class Counsel filed a motion for approval of the service awards on November 8, 2019. |
| Reversion | Is there any reversion? | YES. Class Members must submit completed claim forms and a completed IRS W-4 and W-9 tax form with a valid SSN or Tax Identification Number. If a Class Member fails to produce a valid SSN or Tax Identification Number within six (6) months of the Bar Date, his or her claim shall be terminated and the funds associated therewith shall revert to Defendants. Any amounts representing uncashed settlement checks, uncashed service awards, or any other amount remaining in the Qualified Settlement Fund (as defined in the Settlement Agreement ¶1.30) shall be returned to Defendants six (6) months after the mailing of settlement checks. |
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | YES. This is a claims-made settlement, meaning that class members are required to submit a claim form to receive a payment. All class members who submit a claim form, and completed IRS W-4 and W-9 tax forms with a valid SSN or Tax Identification Number, will be mailed a settlement check, which they will be able to deposit for a period of up to six (6) months after the date of the mailing of the check. |
| Allocation Formula | How will the individual settlement allocations be calculated? | (1) Authorized Claimants who became employed by Defendant prior to, and including December 31, 2015 shall receive a per week payment that shall be determined by the Administrator for each reported workweek they worked prior to December |

| | | 31, 2015. (2) Authorized Claimants who became employed by Defendants on and after January 1, 2016 shall only be entitled to receive a flat payment of $100.00, as described in the Settlement Agreement § 3.5. |
|---|---|---|
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims. |

## ARGUMENT

**I. The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On September 30, 2019, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiff and all servers and bussers employed at any of Defendants' Covered Locations[1] from January 28, 2010 through February 9, 2018. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

8

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

**A. Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs clearly satisfy the numerosity requirement as there are 133 class members.

**B. Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiffs' view, the required relationship between the claims of Plaintiff and those of the class clearly exists here.

This case involves numerous common issues. Plaintiff and the Rule 23 class members all bring common claims involving allegations that Defendants failed to pay Class Members their proper minimum and overtime wages due to time shaving, and failed to pay Class Members the spread of hours premium. Plaintiff also alleges that Defendants failed to provide Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiff's claims arise from the same factual and legal circumstances

that form the bases of the Rule 23 Class Members' claims.  Plaintiff and the Rule 23 Class Members performed the same or similar job duties as servers and/or bussers employed at Defendants' Mama Theresa's restaurants at any time during the Class Period. Plaintiff makes the same allegations regarding unpaid minimum wages, overtime premiums, and spread of hours. Plaintiff and Class members further allege they were not provided proper wage notices and proper wage statements as required under the NYLL.  Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement. *See Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims for overtime pay, spread of hours pay, and unlawful deductions arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark*, 2009 WL 6615729, at *4; *Frank*, 228 F.R.D. at 182.

**D. Adequacy of the Named Plaintiff**

Named Plaintiff JOSE REYES is an adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL

11

1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff and class members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class. *See Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *2 (same).

### E. Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

#### 1. Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some

individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all servers and bussers were subjected to the same unlawful policies, and that all servers and bussers failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### 2. A Class Action Is a Superior Mechanism.

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient

for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted). 1023 (9th Cir. 1998); *Diaz*, 2010 WL 5507912, at *3. Plaintiff and class members have limited financial resources with which to prosecute individual actions. Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine

14

procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"). When, as here, "a settlement is negotiated prior to class certification…it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[2]

### A. The Proposed Settlement Is Substantively Fair.

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

---

[2] Defendants deny Plaintiffs' allegations and assert that they complied with all applicable laws and regulations at all times.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 133 putative class members with fact-intensive claims under both federal and state law. A complicated fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner, weighing in favor of final approval.

**2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, a third-party administrator, Arden Claims Service, mailed the Court-approved notices ("Notices") of the class and collective action and settlement to the class members in English. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no class members have objected to the settlement or opted out of the settlement.

16

**3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).**

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The parties' discovery here meets this standard.  Class Counsel conducted in-depth interviews with Named Plaintiff and the Opt-in Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims.  Plaintiff's Counsel obtained substantial amounts of data, including extensive employment and payroll records for Named Plaintiff and four Opt-in Plaintiffs, including ten written tip credit notices, time records, copies of distributed checks, and Defendants' written policies and employee handbook. Prior to the mediation held on February 9, 2018, Plaintiff and his Counsel performed detailed potential damages calculations based on the data that Defendants provided.

Following informal settlement discussions between the Parties, on February 12, 2018 the parties informed the Court of their settlement in principle, which was reached during a formal, private, class-wide mediation held on February 9, 2018 overseen by Martin F. Scheinman, Esq.

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz*, 2010 WL 5507912, at *5; *deMunecas*, 2010 WL 3322580, at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (same). Therefore, this factor also weighs in favor of final approval.

**4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiff believes their case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra*.

Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain

in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of approval.

**5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as which class members actually received proper notice of the tip credit, what their primary language is, which class members, if any, worked off the clock, and what their individual understanding was regarding the taking of the tip credit or the alleged requirement to continue working unpaid throughout each lunch break. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

**6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).**

Defendants maintain that they are unlikely to be able to withstand a greater judgment. However, even assuming *arguendo* that Defendants may be able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Therefore, this factor – evaluating Defendants' ability to withstand a greater judgment, if any – is neutral.

**7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The $585,000 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. Each class member who does not opt-out of the settlement will receive a payment. The highest individual allocation amount is $8,291.29, and the average settlement payment will be $4,375.00. *See* Affidavit of Angela Ferrante, ¶ 16. Given the inherent risks of litigation discussed above, in Plaintiffs' counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiff would have achieved had she prevailed on all of her claims and survived an appeal due to Defendants' available defenses.

Considering the significant risks of litigation and maintaining class certification described above, it is likely that the judgment, if any, after trial will be much less than the agreed-upon settlement amount. Here, on a gross, per capita basis, the per person award would be approximately $3,305 to each Class Member, before fees and expenses are deducted, without the class members having to do anything.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at

*12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

**B. The Proposed Settlement Is Procedurally Fair.**

**1. The Settlement Was the Result of Arm's Length Negotiation**

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or

21

collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties, including an all-day mediation with Martin F. Scheinman, Esq. of Scheinman Arbitration & Mediation Services on February 9, 2019. Class Counsel spent significant effort to achieve the $585,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Through discovery, Class Counsel obtained, reviewed, and analyzed employment records for class members at all three (3) restaurants, including their payroll records and wage notices, and conducted a deposition of a corporate representative brought by Defendants. This comprehensive discovery enabled Class Counsel to perform class-wide damage calculations.

After eight more months of litigation and negotiations, the parties reached and executed a detailed final settlement agreement. Lee Dec.at ¶ 14. At all times during the settlement process, the parties negotiated on an arm's-length basis. Lee Dec. at ¶15. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010 WL 3322580, at *4.

**2. The Distribution of Class Notice Satisfied Due Process**

22

As one hundred and twenty-two (122) of the one hundred and thirty-four (134) Class Members received the class settlement notice (99.5%), we believe that the result of the class notice distribution is adequate and satisfies due process. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14.  Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice if reasonable means chosen that are likely to inform persons affected); *Parker v. Time Warner Entertainment Company*, 239 F.R.D. 318 (E.D.N.Y. 2007) (Rule 23 does not require that Plaintiffs' counsel give actual individual notice to each member of the class); *Trist v. First Federal Savings & Loan Ass'n,* 89 F.R.D. 1, 3 (E.D.Pa.1980) (finding non-systematic failure in mailing not problematic).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id*. The Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice

23

meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1st Dep't 1990) (approving notice by publication in two newspapers); *see also Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied* 488 U.S. 1005 (1989); *Agent Orange,* 818 F.2d at 168; *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir. 1994) (holding class member bound by judgment although notice not received before opt-out date); *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C. Cir. 1992) (same, notice not received because of incomplete address).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. Defendants provided a class list of 133 Class Members. In plain language that is easily understood by the average person (and was previously approved by this Court) and in English, the claims notices set forth essential information, including the background of the action, the terms of the settlement, the plan of allocation of the settlement fund, and the various rights of class members under the settlement (including the right to opt-out, file objections and attend the Fairness Hearing). The Claims Administrator disseminated the class notice to 133 Class Members, for whom contact details were provided by Defendants. Although twenty-four (24) notices were returned as undeliverable, the Administrator diligently pursued obtaining alternate addresses for the twenty-two (22) Class Members whose notices were returned without a forwarding address and was able to locate twelve (12) updated addresses, which it used to re-mail those notices, eight (8) of which were successfully delivered. Additionally, one (1) Class Member

24

whose advanced address search was unsuccessful was ultimately able to submit his claim, thereby increasing the size of the class to a total of 134 Class Members. Therefore, the Administrator successfully notified 122 of the 134 Class Members. Accordingly, the Court should find that the notices of the proposed settlement of this case provided by mail, was the best notice practicable under the circumstances, and that the Claims Administrator acted reasonably in informing potential class members of the settlement.

## III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested

25

issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶ 14-15. During the litigation, counsel highly experienced in wage and hour law represented Plaintiffs and Defendants.

As of January 17, 2020, 2020, the deadline for class members to object to or opt-out of the settlement, no individual has objected to the settlement.  Lee Dec. ¶ 23-24.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.

Dated: February 11, 2020

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: */s/ C.K. Lee*
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*